IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| JAKE MOSBY and FRANCES MOSBY | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| vs. | * | No. 4:07CV00266 SWW |
| | * | |
| DEVALLS BLUFF HOUSING AUTHORITY, | * | |
| | * | |
| Defendant. | * | |

**Memorandum Opinion and Order**

Plaintiffs bring this action against defendant for violations of Title VIII, 42 U.S.C. §§ 3601 *et seq.* (the Fair Housing Act); Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d; and 42 U.S.C. §§ 1981, 1982, and 1983.  Now before the Court is defendant's motion to dismiss or for summary judgment to which plaintiffs responded.  Defendant filed a reply to plaintiffs' response.  For the reasons stated below, the motion for summary judgment is granted.

**Background**

Plaintiffs are the owners of Yopps Street Apartments, located in Hazen, Arkansas. Defendant DeValls Bluff Housing Authority ("DVBHA") was created by the City of DeValls Bluff, Arkansas.  Joyce Williams is the Executive Director of the DVBHA.  The DVBHA administers the Section 8 Housing Assistance Program funded by the United States Department of Housing and Urban Development ("HUD").  The Section 8 Rental Voucher Program provides rental assistance to low income tenants to allow them to obtain privately-owned rental housing. The DVBHA issues Section 8 vouchers to qualified low income individuals.

Cedar Knoll Apartments in DeValls Bluff is a United States Department of Agriculture ("USDA") Rural Development Complex. All 24 units at Cedar Knoll Apartments are rented pursuant to the USDA Rural Development Program. The DVBHA manages Cedar Knoll Apartments.

The DVBHA has available to it 54 Section 8 rental vouchers for distribution to qualified tenants.[1] All Section 8 rental vouchers issued by the DVBHA must be used at approved locations in Prairie County, Arkansas. Once the available Section 8 vouchers at DVBHA are leased or issued, no more vouchers are available to be provided to tenant applicants until one of the Section 8 program participants leaves the program. When a Section 8 voucher applicant comes to the top of the list, it is the applicant's decision as to which qualified apartment complex or other qualified housing to rent.

According to their complaint, in approximately 2003, plaintiffs obtained funding to construct three separate apartment buildings, each containing six units, called the Yopps Street Apartments ("Yopps Street"). Two of the apartment buildings were completed in April 2004. In early 2004, Williams began working with plaintiffs to prepare tenant application forms and occupancy regulations for the plaintiffs' use at Yopps Street. In August 2004, a Section 8 voucher holder, Thelma Cohen, contacted plaintiffs about renting one of their apartments at Yopps Street. On August 16, 2004, plaintiffs and Cohen signed a Request for Tenancy Approval. On August 17, 2004, Williams inspected and approved the apartment for Cohen at Yopps Street for the Section 8 Voucher Program.

---

[1] Williams states the number of Section 8 Vouchers available to the DVBHA decreased from 54 in January 2007 to 48 in June 2007. *See* Def's. Reply to Pls.' Resp., Williams Supp. Aff. at ¶ 14.

On September 21, 2004, plaintiffs filed a complaint with HUD alleging discrimination against the DVBHA.  Plaintiffs alleged that when prospective tenants would go to Williams to inquire about Yopps Street, she told them the apartments were too small and too expensive, and steered them to apartments owned and operated by white landlords, including Cedar Knoll Apartments.  On March 15, 2005, HUD issued a Determination Letter, finding no reasonable cause to believe that defendant violated the Fair Housing Act, and finding that defendant was in compliance with Title VI of the Civil Rights Act.  HUD notified plaintiffs of that decision in a letter dated March 22, 2005.

On March 22, 2007, plaintiffs filed a complaint in federal court, alleging that "[w]hite landlords in Prairie County, Arkansas, are afforded terms, conditions, or privileges in the rental of their property under the HUD Section 8 Voucher program, as administered by Joyce Williams of the DeValls Bluff Housing Authority, that are not afforded to the plaintiffs, on account of their race, in violation of 42 U.S.C. § 3604, 42 U.S.C. § § 1981 and 1982, and Title VI of the Civil Rights Act."  Compl. at ¶ 15.  Plaintiffs assert that one of their tenants attempted to secure a Section 8 voucher from the DVBHA but was told she could get assistance if she moved out of Yopps Street and into Cedar Knoll Apartments.  Now before the Court is defendant's motion to dismiss or for summary judgment.

**Discussion**

Defendant moves for dismissal of plaintiffs' claims pursuant to Rules 12(b)(6), 41(b),[2] and 56 of the Federal Rules of Civil Procedure, asserting plaintiffs fail to state a claim for relief, that plaintiffs' claims are made outside the statute of limitations, that plaintiffs have no standing to participate in the Section 8 Voucher Program, and that plaintiffs have suffered no harm.

### 1.     Motion to Dismiss

In deciding a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), all facts alleged in the complaint are assumed to be true. *Doe v. Northwest Bank Minn., N.A.*, 107 F.3d 1297, 1303-04 (8th Cir. 1997). The complaint must be reviewed in the light most favorable to the plaintiff, *McMorrow v. Little*, 109 F.3d 432, 434 (8th Cir. 1997), and should not be dismissed unless it is clear beyond doubt that the plaintiff can prove no set of facts thereunder which would entitle him or her to relief. *Hafley v. Lohman,* 90 F.3d 264, 266 (8th Cir. 1996).

Defendant argues plaintiffs' complaint should be dismissed under Fed.R.Civ.P. 12(b)(6) because it contains no factual allegations but mere conclusory statements. Citing *Bell Atlantic Corp. v. Twombly,* ___ U.S. ___, 127 S.Ct. 1955 (2007), defendant contends plaintiffs' complaint fails to provide fair notice of the nature of their claims or the grounds upon which their claims rest. In *Twombly,* a case brought under the Sherman Act, the Supreme Court stated that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusion, and a formulaic recitation of the elements of a cause of action will

---

[2] Fed.R.Civ.P. 41(b) provides: "For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant." The Court assumes defendant's citation of Rule 41(b) is based on the argument that plaintiffs' complaint is not a proper pleading. For the same reasons the Court denies the motion to dismiss for failure to state a claim, the Court denies the motion to dismiss on the basis of 41(b).

not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." 127 S.Ct. at 1964-5.

Plaintiffs allege defendant discriminated against them on the basis of race by steering potential tenants away from their apartments in favor of apartments owned by white persons. They allege defendant assured one of their tenants that she could get assistance if she moved from Yopps Street to Cedar Knoll. While plaintiffs provide minimal factual allegations in support of their claims, the Court cannot say that plaintiffs' complaint does not give defendant fair notice of the claims and the grounds on which they are based. Therefore, the Court denies defendant's motion to dismiss for failure to state a claim for relief.

**2.     Motion for Summary Judgment**

Defendant argues it is entitled to summary judgment because 1) some of plaintiffs' claims under the Fair Housing Act are untimely; 2) plaintiffs have no standing to participate in the Section 8 Voucher Program; and 3) defendant did not discriminate against plaintiffs because of race.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*

475 U.S. 574, 586 (1986). The non-moving party may not rest on mere allegations or denials of her pleading but must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587 (quoting Fed.R.Civ.P. 56(e)).

"[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995). The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita,* 475 U.S. at 587 (citations omitted).

**a. Statute of Limitations**

Under the Fair Housing Act ("FHA"), a person may commence a civil action in an appropriate United States district court "not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(A). "The computation of such 2-year period shall not include any time during which an administrative proceeding under this title was pending with respect to a complaint or charge under this title based upon such discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(B).

Plaintiffs filed a complaint with HUD on September 21, 2004. The most recent act of discrimination was alleged to have occurred on August 16, 2004. *See* Def's. Mot. Summ. J., Ex. 3, Determination of No Reasonable Cause and Letter of Finding of Compliance, p. 1. Defendant argues the limitations period began to run on August 16, 2004, but was tolled upon the filing of plaintiffs' complaint on September 21, 2004. On March 15, 2005, HUD determined there was no reasonable cause to believe defendant violated the FHA. Plaintiffs received notice of that

finding by letter dated March 22, 2005.  Plaintiffs filed the complaint before this Court on March 22, 2007.  Defendant asserts that even disregarding the period of time between the alleged discriminatory conduct on August 16, 2004, and the filing of the administrative complaint on September 21, 2004, the limitations period expired on March 16, 2007, two years after HUD disposed of plaintiffs' complaint.  Therefore, defendant argues, any claims of discrimination asserted by plaintiffs in their complaint to HUD are untimely and should be dismissed.

Plaintiffs argue that they did not receive notice that the administrative proceeding had concluded until a few days after the letter dated March 22, 2005, and therefore, their claims are timely.  In addition, plaintiffs assert defendant' conduct was continuing in nature, the last acts of discrimination occurring during the period of July 2006-February 2007.

In *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 380-81 (1982), the Supreme Court held that a pattern-or-practice theory may revive otherwise stale acts if these acts are part of a "continuing violation" of the FHA.  Under the continuing-violations theory, claims challenging "an unlawful practice" under the FHA are timely as long as the "last asserted occurrence of that practice" falls within the limitations period. 455 U.S. at 380-81.  Thus, an allegation of a continuing violation under the FHA is treated differently than an allegation of a discrete act of discrimination for statute-of-limitations purposes. *Id.*  Here, plaintiffs allege defendant engaged in a continuing practice of discrimination up to and including February 2007.  To the extent that any of plaintiffs' claims under the FHA are based on alleged acts of discrimination that were a part of plaintiffs' HUD complaint, those claims are not barred by the statute of limitations.

**b.      Claims under Title VI and Title VIII**

Plaintiffs claim defendant discriminated against them in terms and conditions of the rental of their facilities by refusing to provide Section 8 assistance to persons desiring to rent from them. They claim Williams told prospective tenants that Yopps Street Apartments were too small and too expensive. Plaintiffs further claim that one of their tenants, Lisa Headdy, tried to get Section 8 rental assistance from DVBHA but was told she could only get assistance if she moved into Cedar Knoll Apartment, an apartment managed and allegedly owned by the City of DeValls Bluff.

Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, states, "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." In order to establish a claim under Title VI, a plaintiff must show that the entity involved is engaging in racial or national origin discrimination and that the entity involved is receiving federal financial aid. *Jackson v. Conway,* 476 F.Supp. 896, 903 (E.D.Mo. 1979), *aff'd* 620 F.2d 680 (8th Cir. 1980). Proof of discriminatory intent is not required, and violations of Title VI can be established by disproportionate impact. *Guardians Ass'n v. Civil Serv. Comm'n,* 463 U.S. 582, 591 (1983). To state a claim under Title VIII, 42 U.S.C. § § 3601 *et seq.* (the Fair Housing Act), "plaintiffs must allege and show that defendant engaged in the prohibited conduct of coercing, intimidating, threatening or interfering with them and their right to aid or encourage their minority tenants in the exercise of their rights under the Act." *Roth v. City of Syracuse,* 96 F.Supp. 171, 183 (N.D.N.Y. 2000).

The evidence is undisputed that when plaintiffs were building Yopps Street, Williams assisted them in preparing their application forms and occupancy regulations for plaintiffs' use at Yopps Street. Williams says she did a lot of typing at her home for plaintiffs, at no charge, to

assist them in renting out their apartments. *See* Def's. Mot. Dismiss/Summ.J., Ex. A at ¶ 8.[3] Williams states that no later than April 2004, before the Yopps Street Apartments were completed, she included Yopps Street on the list of landlords who may participate in the Section 8 Program, and it is undisputed that on August 17, 2004, Williams inspected and approved an apartment at Yopps Street for Thelma Cohen for the Section 8 Voucher Program. *See id.* at ¶¶ 19-20. Williams states that all applicants for Section 8 vouchers referred to her by plaintiffs, and who qualified under HUD guidelines, were placed on the waiting list for a Section 8 voucher. *See id.* at ¶ 28. Williams denies telling anyone that she thought Yopps Street Apartments were too small and too expensive.

With regard to Headdy, Williams states that in July 2006, Headdy came to the DVBHA to apply for a Section 8 voucher. Headdy turned in an application on July 5, 2006, and was placed on the waiting list. According to Williams, there were 63 other persons on the waiting list. *Id.* at ¶¶ 12-13. Because Headdy met the preferences, *i.e.*, working/disabled and residency in the county, she was placed in the 17th position on the list after the other persons with preferences.[4] *Id.* at 14. Williams says Headdy came to her again on January 15, 2007, and told Williams she was about to be evicted from Yopps Street due to her inability to pay her monthly rent. Williams said she told Headdy that because Cedar Knoll Apartments was not a HUD program and had no one on its waiting list, Headdy could apply for an apartment there and her rent would be $180.00 per month rather than the $450.00 per month she was paying at Yopps Street. According to Williams, Cedar

---

[3] Plaintiffs state they can neither admit nor deny Williams' statement because they have not engaged in discovery. Pls.' Resp. to Def's. Statement of Facts.

[4] In her Supplemental Affidavit, Williams states Headdy was actually 16th on the list because Williams determined one person was on the list under two different names. *See* Def's. Reply, Williams Supp. Aff. at ¶ 6.

Knoll Apartments are owned by the City of DeValls Bluff, and are restricted to elderly and disabled tenants. *Id.* at ¶ 15. Cedar Knoll does not accept Section 8 vouchers because all the apartments receive rental assistance from USDA. *Id.* at ¶ 6. Williams says that when an apartment at Cedar Knoll became available in mid-February 2007, she contacted Headdy concerning the vacancy but Headdy declined to move from Hazen to DeValls Bluff for personal reasons. *Id.* at ¶ 17. Ms. Headdy died in March 2007.

Plaintiff Jake Mosby states Headdy was never in jeopardy from being evicted from Yopps Street and that he saw Williams come to Yopps Street in an attempt to persuade Headdy to leave his apartment complex. *See* Pls.' Resp. to Def's. Statement of Facts, Ex. A (Mosby Aff.) at ¶ ¶ 15-17. According to a statement Headdy signed in February 2007, Williams refused to provide her with assistance, and wanted her to relocate to Cedar Knoll Apartments where the monthly rent was $180.00 instead of $ 450.00 at Yopps Street. *See id.* (Headdy Aff.). Jake Mosby states in his affidavit that he "discovered that the reason I was not getting Section 8 tenants is due to the fact that Ms. Williams was telling prospective tenants that the Yopps Street Apartments were too small and too expensive, and that they should select either Cedar Knolls or some other apartment complex in Prairie County, Arkansas." *See id.* (Mosby Aff.) at ¶12.

Plaintiffs have come forward with no evidence that their race had anything to do with Williams' alleged efforts to steer tenants away from Yopps Street. They have no evidence that Williams' alleged statement that Yopps Street Apartments were too expensive and too small had anything to do with plaintiffs' race, or that her efforts on behalf of Headdy were connected to plaintiffs' race.

Plaintiffs state they have not yet conducted discovery, and they specifically question where all the Section 8 vouchers available to DVBHA are being used. They point to Williams' statement that DVBHA has only 54 Section 8 Vouchers and that seventeen are being used at four apartment complexes, including Yopps Street. Plaintiffs say the Court should allow discovery to uncover where the other 37 vouchers are being used.

> Although a district court is required to give the parties ample time to conduct discovery, Rule 56(c) does not require the completion of all discovery before a court may enter summary judgment. 'Rule 56(f) permits a party opposing summary judgment to seek a continuance and postpone a summary judgment decision until adequate discovery has been completed.' When seeking a continuance, however, the party opposing summary judgment is required to file an affidavit with the district court showing what specific facts further discovery might uncover.

*Roark v. City of Hazen,* 189 F.3d 758, 762 (8th Cir. 1999).

Plaintiffs have not asked for a continuance or filed an affidavit showing what specific facts further discovery might uncover. They question where all 54 DVBHA Section 8 vouchers are being used. The Court fails to see how this information would assist plaintiffs in making their case for discrimination. In her original affidavit, Williams states:

> 23. The apartment complexes which have been approved for the Section 8 Voucher program in Prairie County, Arkansas, include Hazen Apartments, Cedar Branch Apartments, BWH Management (now Deer View Apartments), and Yopps Street Apartments.
>
> 24. In the calendar year 2006, Hazen Apartments received two Section 8 tenants through DVBHA, Cedar Branch Apartments received three Section 8 tenants through DVBHA, BWH Management received three Section 8 tenants through DVBHA, and Yopps Street Apartments received seven Section 8 tenants through DVBHA.
>
> 25. The number of Section 8 Vouchers currently issued to tenants which are used at the previously named four apartment complexes include one Section 8 tenant at Hazen Apartments, two Section 8 tenants at Cedar Branch Apartments, six Section 8 tenants at Deer View Apartments, and eight Section 8 tenants at Yopps Street Apartments.

>  26. Since September, 2004, Yopps Street Apartments has had four Section 8 tenants in calendar year 2004, five Section 8 tenants in 2005, and seven Section 8 tenants in 2006, and eight Section 8 tenants in 2007.

Def's. Mot. Dismiss/Summ.J., Ex. A.

In her supplemental affidavit, Williams submits copies of twelve Housing Assistance Payments Contracts for Section 8 Tenant-Based Assistance for the tenants noted thereon which were used at Yopps Street. Each contract is signed by Williams and Plaintiffs Jake or Frances Mosby. *See* Def's. Reply to Pls.' Resp., Ex. 4. The twelve contracts were signed over a period beginning in August 2004 to January 2007.

A list of all landlords with property leased with Section 8 assistance through the DVBH shows Yopps Street has more Section 8 tenants than any other landlord, including owners of the apartment complexes previously mentioned and other landlords who lease single-family homes. The list accounts for all 48 Section 8 vouchers available to DVBHA as of June 2007. Yopps Street has eight Section 8 vouchers; Deer View has five; Cedar Branch as two; and Hazen Apartments has one. Another tenant, who has two single-family residences, has two Section 8 vouchers, and the remaining thirty Section 8 vouchers are used at single-family residences owned by what appears to be thirty different landlords. *See id.*, Ex. 5.

Because plaintiffs have come forward with no evidence to raise a genuine issue of material fact in support of their discrimination claims under Title VI of the Civil Rights Act of 1964 or the Fair Housing Act, defendant's motion for summary judgment on those claims is granted.

**b.  Claims Under 42 U.S.C. § § 1981, 1982, and 1983**

In addition to their Title VI and FHA claims, plaintiffs bring claims pursuant to 42 U.S.C. § § 1981, 1982, and 1983.  Defendant asserts plaintiffs have no standing to assert claims under these statutes because they have no right to participate in the Section 8 Voucher Program.

> Sections 1981 and 1982 protect citizens' rights to make and enforce contracts and purchase both personal and real property without any impairment due to private or public racial discrimination. A plaintiff establishes a prima facie case under § 1981 by showing (1) membership in a protected class; (2) the intent to discriminate on the basis of race on the part of the defendant; and (3) discrimination interfering with a protected activity (i.e., the making and enforcement of contracts). *Bediako v. Stein Mart, Inc.,* 354 F.3d 835, 839 (8th Cir.2004). The prima facie elements of a § 1982 case parallel those of a § 1981 case and require that a plaintiff show (1) membership in a protected class; (2) discriminatory intent on the part of the defendant and (3) interference with the rights or benefits connected with the ownership of property.

*Daniels v. Dillard's, Inc.,* 373 F.3d 885, 887 (8th Cir. 2004).  Plaintiffs allege defendant steered tenants with Section 8 vouchers away from Yopps Street because of plaintiffs' race.  As discussed in detail above, plaintiffs have no evidence to support these allegations of race discrimination.  Further, there is no evidence that a contract existed between plaintiffs and defendant or that defendant interfered with plaintiffs' rights to lease property under § 1982.

Under 42 U.S.C. § 1983, a plaintiff must allege that the challenged conduct was attributable to a person acting under color of state law and that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States.  Defendant contends plaintiffs have no property interest in participation in the voucher program.  "To have a property interest . . . a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it . . ."  *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577 (1972).  In *Roth v. City of Syracuse,* 96 F.Supp.2d 171 (N.D.N.Y. 2000), the court found a landlord

had no property right to participate in a low-income tenant rental program sufficient to sustain a suit under § 1983 claiming wrongful denial of that right. To the extent plaintiffs' § 1983 claims depend on a property right in participation in the Section 8 Program, those claims are dismissed.[5] In addition, plaintiffs fail to submit evidence to raise a genuine issue of material fact as to the violation of their rights under the Constitution or laws of the United States.

**Conclusion**

IT IS THEREFORE ORDERED that defendant's motion for summary judgment [docket entry 6] is hereby granted.[6]   A separate Judgment will be entered dismissing plaintiffs' complaint.

DATED this 29th day of October 2007.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE

---

[5]Plaintiffs allege Williams "has acted under color of law in denying the plaintiffs' their civil rights, which has resulted in damage to the plaintiffs, making this cause of action enforceable pursuant to 42 U.S.C. 1983." Plaintiffs do not address in their response defendant's arguments regarding the dismissal of their § 1983 claims.

[6]Defendant's motion for order to strike plaintiffs' Rule 56 Statement [docket entry 18] and motion for continuance [docket entry 23] are moot.